JOHN C. HASKELL & wife *vs.* COUNTY COMMISSIONERS OF BRISTOL.

A petition, presented to the board of aldermen of a city for the location of a new road, was referred to the usual committee, who reported in its favor with an order requesting the superintendent of streets to lay out the road agreeably to the petition, by putting down metes and bounds, and to report to the board, which he did. The mayor and aldermen went upon the ground, in compliance with an order instructing the city clerk to so notify the owners of the land over which the road was supposed to run; examined the metes and bounds; found that they were correct, and that no one was present to object to the laying out, except claimants of damages; and recommended the adoption of an order accepting the road as a highway, which order was referred to a joint committee of the city council, and on their report passed, locating the way by metes and bounds, but in one portion "allowing for necessary curves between the monuments placed by the superintendent of streets." The road was constructed accordingly, with some alterations made by agreement with abutters. More than a year afterwards the board of aldermen, without any new petition being filed, ordered the superintendent of streets to make an additional return in conformity with those alterations, and he made a return following the line of the road as constructed, and the board of aldermen passed an order accepting that road as a highway. *Held,* that a petition for damages by an owner of land not affected by the alterations should have been presented within a year from the original laying out.

A city, that has taken land and actually constructed a highway over it, cannot object that no notice was given of the purpose to locate; nor that the names of the owners of the land were not stated in the laying out.

THOMAS, J. This is a petition for a mandamus to the county commissioners to issue a warrant for a jury to assess the damages alleged by the petitioners to have been sustained by them by reason of the laying out of a way, called Clark's Point Road, by the city of New Bedford, over the land of the petitioners.

The answer of the commissioners admits the filing of a petition for a warrant on the fourth Tuesday of March 1856; that

notice of such petition was served upon the city of New Bedford; that the parties appeared before them; and proceeds to state that the commissioners found that the way in question was laid out on the 13th of June 1853, more than a year before the filing of the petition for a warrant; that the proceeding of the city in May 1855, which the petitioners relied upon as the laying out of said way, was but an alteration of the line of the road at points distant from the land of the petitioners, and which in no way affected it; so that under neither the laying out in 1853 nor the alteration in 1855 were the petitioners entitled to damages; not as to the first, because their petition was not filed in time; not as to the second, because the alteration was not upon the land of the petitioners, nor in any way touched their interests.

The parties have agreed upon certain facts, to wit, that the road known as Clark's Point Road was laid out and adopted by the city of New Bedford in June 1853; that it was laid out over the land of the petitioners; that no petition for a jury to assess damages was made within one year from the laying out; that the road was again laid out by the city and accepted in May 1855, according to the records annexed; that there was then no alteration of the line of the road over the land of the petitioners, but that the second laying out covered the same land of the petitioners which was covered by the first laying out; that the petitioners have never received any compensation under either laying out, and that the land of the petitioners was on the east side.

We are of opinion that if the way was so laid out in 1853, that the petitioners, under the laying out then made, were entitled to their damages, they cannot now have them; because, upon such laying out, the statute of limitations began to run, and the right is now barred; and because under the subsequent proceedings no new damage was sustained nor any old right revived.

We are then to inquire what was done in 1853. There was a petition to the board of aldermen for laying out a road around Clark's Point from Gifford's Barn to Cove Street. It

was referred to the committee " on laying out and widening streets." That committee reported in favor of laying out, with an order requesting the superintendent of streets to lay out a road around Clark's Point, agreeably to the petition, by putting down metes and bounds ; and to report to the board of aldermen. The superintendent of streets reported to the mayor and aldermen a laying out of the street, giving the line on the water by stone monuments, and the other line as eighty feet eastwardly from the first. An order was adopted to notify abutters of a time when the mayor and aldermen would be upon the road for the purpose of laying it out as a public highway. The mayor and aldermen went upon the ground, " in compliance with an order instructing the city clerk to notify the owners of the land through whose estate said road was supposed to run, examined the metes and bounds thereof as put down by the superintendent of streets, and found them correct, and none present to object to the laying out of the street," except certain persons claiming damages, not including the petitioners. Upon their return they recommended the adoption of an order accepting the Clark's Point Road as a highway. This was on the 6th of June 1853. The order was referred to the joint standing committee on roads, who reported that the order ought to pass, and on the 13th of June 1853 the report was accepted in concurrence and the order adopted.

That order was as follows : " Ordered, That Clark's Point Road from a stone monument in the south line of Cove Street and west line of South Water Street, south one degree west forty eight and sixty six one-hundredth rods, to a stone monument placed in the north line of Pardon Gifford's, west of his barn ; thence south ten degrees east, sixteen and twenty eight one-hundredth rods ; thence around Clark's Point, following high water mark as near as practicable, allowing for necessary curves between the monuments placed by the superintendent of streets, and defined in the layout of said street, eighty feet wide, a distance of four miles, more or less, to a stone monument in the south line of contemplated Cove Street, on the west shore of Acushnet River ; be, and the same is hereby accepted as a public highway."

The only things left in uncertainty are the curves between the monuments erected by the superintendent of streets. The expression of the order is " allowing for necessary curves." But they certainly did not affect the land of the petitioners.

Thus the matter stood. The city went on with the construction of the road. Some alterations were made in the progress of the construction by agreement with the abutters. No change was made touching the land of the petitioners.

It is difficult to see why after June 13th 1853 the petitioners could not have pursued their legal remedy for damages.

The objection that notice was not given of the purpose to locate does not seem to be sustained by the facts. Nor having actually laid out and constructed their road over land of the petitioner could the city have been heard to make this objection. See Rev. Sts. *c.* 24, § 77.

Neither would the objection that the curve between the monuments was left uncertain have been an answer to the claim of the petitioners, whose land would have been taken on any construction of the location, and in point of fact was taken and wrought for travel.

Nor would the objection avail the city that the names of the owners of the land were not given in the laying out. If it would, there was no valid laying out in 1853 or 1855, and these petitioners have no claim for damages on any laying-out, but must resort to their action of trespass.

So far the way is plain. On the first of December 1854 it was ordered in the board of aldermen that the superintendent of streets should make an additional return in conformity with the alterations made in progress of construction of said road as by agreement with proprietors of lands abutting thereon. The superintendent made a return following on the shoreside the line of the walk as constructed. On the 8th of January 1855, it was ordered that the city clerk notify the abutters that the mayor and aldermen would be upon the road on the 27th instant to lay it out. Whether any such meeting was had does not appear, or whether there was any action under the order.

On the 14th of May 1855 the following order was adopted :

Haskell & wife *v.* County Commissioners of Bristol.

" Whereas the road around Clark's Point was laid out by the board of aldermen and accepted by the city council, June 13th 1853, as ' Clark's Point Road;' and whereas in constructing said road, it was deemed expedient to alter the line of the road in some places, thus rendering it necessary that a new layout should be made, which was accordingly done by the superintendent of streets, December 6th 1854, under the name of French Avenue, which layout was accepted by the board of aldermen, January 8th 1855; but as there is nothing upon the records which shows that there was any subsequent action taken in relation to accepting said road under the name of French Avenue given to it by the board of aldermen, December 6th 1854, therefore

" Resolved, that the road around Clark's Point be, and the same is hereby accepted as a public highway, in accordance with the new layout made by the superintendent of streets, Dec. 6th 1854.

" Resolved, that the name of said road shall be ' Clark's Point Road,' the name given to it when it was first accepted in 1853, by the city council."

The remaining question is, what effect is to be given to this order. The direction of the board of aldermen to the superintendent of streets was to make an additional return of said road. There was no petition for a new laying out, no actual laying out, nor any assessment of damages. Whether it can be regarded as an alteration of a way, it is not necessary for the interests of these petitioners to inquire.

The result of the whole matter then is, that as, under the first laying out, the petitioners might have recovered their damages, the statute of limitations, from such laying out, ran against them; that their claim for damages was barred by this statute and that the petition for a mandamus must be dismissed.

*T. D. Eliot & T. M. Stetson,* for the petitioners.

*W. W. Crapo,* for the respondents.